```
 1                IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF PUERTO RICO
 2

 3
       UNITED STATES OF AMERICA,     )
 4                                   )
                      Plaintiff,     )
 5     vs.                           )   Case No:  11-241 (DRD)
                                     )
 6     ANTHONY TORRES-LOPEZ,         )
                                     )
 7                    Defendant.     )

 8

 9     _____

10                 TRANSCRIPT OF SENTENCING HEARING
                           HELD BEFORE
11            THE HONORABLE JUDGE DANIEL R. DOMINGUEZ
                      Monday, June 18, 2018
12
       _____
13

14
                      A P P E A R A N C E S
15

16
       For the United States:
17
              Mr. G. Andrew Massucco-LaTaif, AUSA
18

19
       For the Defendant:
20
              Mr. Diego Alcala-Laboy, Esq.
21

22

23

24

25
```

```
 1                (PROCEEDINGS COMMENCED AT 10:42 A.M.)

 2

 3            DEPUTY CLERK:  United States of America versus

 4    Anthony Torres-Lopez.

 5            MR. MASSUCCO:  Good morning, Your Honor.  On

 6    behalf of the United States, we are ready to proceed.

 7            MR. ALCALA:  Good morning.  Diego Alcala on behalf

 8    of Mr. Torres.  He is being brought in from custody.

 9            DEPUTY CLERK:  The defendant is present in court.

10    He will be assisted by the official court interpreter.

11            MR. ALCALA:  Your Honor, just to inform the Court,

12    he is fully bilingual and he has -- he was born in the

13    United States.  I believe that he will be waiving, as he has

14    done in the past, the use of an interpreter.

15            THE COURT:  Okay.  Very well.  Sir, your lawyer

16    just advised the Court that you are fully bilingual and that

17    you do not need a translator.  Is that the case?

18            THE DEFENDANT:  Yes, Your Honor.

19            THE COURT:  All right.  Marshal, please take the

20    handcuffs away from this gentleman.  Thank you, sir.

21            All right.  Has the presentence report been duly

22    explained to the defendant?

23            MR. ALCALA:  Yes, Your Honor.  We were able to see

24    the presentence report, and I explained to him the changes

25    made and the addendum to the presentence -- the addendum and
```

1   the new presentence report that came out a month ago.  We

2   did discuss this last Friday at MDC when he was brought back

3   to the jurisdiction.

4              THE COURT:  All right.  So have you had sufficient

5   time to be prepared for this case?

6              MR. ALCALA:  Yes, Your Honor.  We did file on

7   Thursday a sentencing memorandum also regarding this case.

8              THE COURT:  All right.  And if he had any

9   questions, did you duly address them --

10             MR. ALCALA:  Yes, Your Honor.

11             THE COURT:  -- to him to his full satisfaction?

12             MR. ALCALA:  I explained it to the best of my

13   abilities, Your Honor, and I think that he was satisfied

14   with my answers.

15             THE COURT:  Sir, did you listen to all the

16   questions that I just asked your lawyer?

17             THE DEFENDANT:  Yes, Your Honor.

18             THE COURT:  Did you hear his answers?

19             THE DEFENDANT:  Yes, Your Honor.

20             THE COURT:  Okay.  Is he making a correct

21   representation to the Court?

22             THE DEFENDANT:  Yes, Your Honor.

23             THE COURT:  All right.  Okay.  So I will hear your

24   allocution on his behalf.  I am aware that you filed a

25   sentencing memorandum, sir.

```
 1                    MR. ALCALA:  Yes, Your Honor.

 2                    THE COURT:  Go right ahead.

 3                    MR. ALCALA:  This case is the last one of the

 4      La Perla cases, as the Court is aware.  Mr. Anthony Torres

 5      and the Government, along with this attorney, came with an

 6      agreement -- proposed agreement to the Court which

 7      incorporated a few things.  And it's basically -- I believe

 8      the intent here was to plead guilty but also to take into

 9      account that he was not a fugitive.  He has been in custody,

10      federal custody, since 2012, and this matter should have

11      been resolved way earlier, Your Honor.  If it wasn't for the

12      actions of Mr. Torres specifically, I don't know if he would

13      have been brought back at the time that he would have.

14                    So we propose to the Court an agreement that the

15      Government felt, and along with the defendant, is fair.

16                    THE COURT:  What is the fair agreement?

17                    MR. ALCALA:  Well, Your Honor, as discussed in the

18      plea agreement --

19                    THE COURT:  I know.  I just want you to reiterate

20      it.

21                    MR. ALCALA:  Yes, Your Honor.  We agreed on a

22      60-month sentence, to be served concurrent with the

23      undischarged term of the criminal case in New York City,

24      Case Number 11-569 (PAC), for which he is still serving, and

25      to give him credit not just for the time in which he was
```

1      arraigned until the sentencing date, which is standard, or

2      at least the Court has always considered that along with

3      BOP, but also to give him the six months for which he had

4      been waiting at MDC to be brought -- from the moment he got

5      to MDC to the moment he was brought --

6              THE COURT:  What is the sentence then?

7              MR. ALCALA:  Six months plus the time period from

8      December all the way here.  And then, as I explained --

9              THE COURT:  From December to all the way here he

10     is under custody of the Feds.  That's all right, right?

11             MR. ALCALA:  Yes, Your Honor, but as the PSR noted

12     and we also noted in our sentencing memorandum, when you are

13     serving a particular period of time, it will be counted

14     towards the other case, not towards this case.  So we would

15     need to depart or adjust that particular period of time.

16             THE COURT:  So I sentence him to 54 months.  Is

17     that enough?

18             MR. ALCALA:  No.

19             THE COURT:  No?  Why?

20             MR. ALCALA:  Well, it's proper and the Court can

21     do that.  What we are asking for is not only the 54 --

22     because the 54 would account for the six-month period from

23     June to December, so when he was brought to the jurisdiction

24     to the moment he was arraigned, but it does not account for

25     the moment when he was arraigned to the moment that we are

1    standing here today.  So it's those two time periods that

2    need to be considered and then sentenced to in order for him

3    to get that --

4            THE COURT:  United States.

5            MR. MASSUCCO:  Judge, I don't believe that's

6    correct.

7            THE COURT:  I don't either, but I just wanted --

8            MR. MASSUCCO:  I never heard of a guy being in

9    jail down here and charged since December and not getting

10   credit for the time he is here.  Although we have kind of

11   acquiesced the fact that the Court award him an illegal

12   sentence of 54 months, anything below that --

13           THE COURT:  The legality is because if I don't do

14   that, there is going to be a mess out there.

15           MR. MASSUCCO:  No, Your Honor.  That's fine.  The

16   only one -- if he were to appeal his unlawful sentence, he

17   would be on the losing end of -- in the end.  So we think

18   that although we agreed on a 60-month sentence, the best way

19   to effectuate that would be a sentence of 54 months in this

20   case.

21           THE COURT:  54 months because if not, you may have

22   trouble with the Marshal in crediting him.  That was my

23   thought.  But why?  Let's go through your request again.

24           MR. ALCALA:  Okay.  So I believe, as I pointed out

25   in the sentencing memorandum, Your Honor, the section that

1    correctly Probation noted, which is 5G1.1, we have the

2    statute -- let me back up.

3            We have a statute which indicates that BOP is

4    responsible for calculating credit along with the length of

5    a sentence.  We also have a statute that indicates that when

6    calculating credit, the credit will be awarded to that

7    particular individual if that credit for which he is being

8    detained on the particular sentence has not been counted on

9    another case.

10           In this particular scenario, we believe that that

11   other case would be the New York case.  So then we take into

12   account --

13           THE COURT:  The New York case is not the La Perla

14   case.

15           MR. ALCALA:  That is correct, but we have decided

16   that it was relevant conduct and so -- such as has been

17   advised by the Government and such as has been reflected in

18   the PSR, Your Honor.  That's why that conviction does not

19   carry any points when you look at the criminal history

20   because it is considered relevant conduct.

21           What we are asking for then is to add those

22   particular time periods, based on the fact that we

23   believe -- and again, we may be incorrect, but we believe

24   that BOP will not be crediting that period of time from

25   December, which is the arraignment date, all the way to the

1      sentencing date.

2              MR. MASSUCCO:  Once he is arraigned, it's a matter

3      of law that he is credited that time.  Judge, it has nothing

4      to do with BOP's calculations.  Once he is arraigned, as a

5      matter of law, he gets credited from that date.  There's

6      nothing -- an adjustment -- to now give him additional time

7      is ridiculous.  He's already being credited for that time.

8              MR. ALCALA:  We are not putting -- let me just be

9      very clear.  We are not asking anything different from what

10     the Government is stating.  We are not asking for a period

11     that will not be credited.  Our only concern was that if the

12     Court -- Probation, I believe, also has made that same

13     agreement with what the Government just stated.

14             THE COURT:  I think he is going to get credit for

15     all the time from arraignment on, plus the six months that

16     the Court is going to provide him because he was waiting six

17     months.

18             MR. ALCALA:  We don't have a disagreement with the

19     Government's intent along with our intent.  We are the same,

20     Your Honor.  My only concern was that because of the fact

21     that he has been serving prior, that the BOP will not credit

22     that time.  But if I am incorrect --

23             THE COURT:  That's why I am sentencing him to 54.

24     All right?

25             So sir, you are entitled to perform an allocution

1    on your behalf as to the sentence in this case.  You don't

2    have to make an allocution, but you are certainly entitled

3    to.  But the decision is yours, not ours.

4         THE DEFENDANT:  I would like to say -- I want to

5    say today, Your Honor, I stand before the Court of the

6    Honorable Judge Dominguez.  I would like to take this

7    opportunity to apologize to the United States Government,

8    its citizens, and my community for my criminal conduct.  I

9    apologize to all parties affected by my actions, to

10   everyone who was put in danger by my activities.  I accept

11   my punishment without reservation.  I apologize especially

12   to my family for putting them --

13        THE COURT:  Is your family here?

14        MR. ALCALA:  They were not able to make it, Your

15   Honor.  We have been in contact with them; not only his

16   sister, but also his mother who is in Caguas.

17        THE COURT:  Go ahead.  Please continue.

18        THE DEFENDANT:  I apologize especially to my

19   family for putting them through this situation.  I would

20   like to say I'm sorry to my children for the time we have

21   lost and the time we will lose.  Be brave, and your father

22   will not be incarcerated forever.  I apologize to my family

23   who raised me with love and taught me right from wrong.  I'm

24   sorry for departing from the path that you laid out in front

25   of me.

1        To my lawyer, Mr. Alcala, I would like to extend

2    my gratitude for the wise counsel and competent handling of

3    this matter.  I would not have been able to make it through

4    without your valuable assistance.

5        In closing, I thank the Court for his time and

6    disposition of my case.  And I would request the minimum in

7    order to spend the most possible time raising my children,

8    for my actions since incarceration reflect my total

9    commitment to rehabilitation, and I ask Your Honor for the

10   chance to continue in this commitment.

11       THE COURT:  Thank you, sir.

12       MR. MASSUCCO:  Judge.

13       THE COURT:  Yes, sir.

14       MR. MASSUCCO:  In discussing with my co-counsel

15   from the office, there may be an issue of the time since

16   December.  So if the Court could specifically award him the

17   six months credit plus credit for time served since his

18   arraignment in this jurisdiction, that language should be

19   sufficient to clear up any BOP issues.  Because technically,

20   once he is serving a sentence, until discharged, he is only

21   credited for serving that sentence.  But if the Court does

22   say specifically the 54 months, giving him credit for the

23   six months prior and credit for time served since December,

24   that should suffice.

25       THE COURT:  That's what I will do.

```
1          MR. ALCALA:  Your Honor, briefly.  Again, we refer
2      to the PSR, and as to the language --
3          THE COURT:  The PSR has precisely -- they have
4      precisely -- that's what they suggested me to do.
5          MR. ALCALA:  Yes, Your Honor.  I am not
6      disagreeing with that.
7          THE COURT:  Those are the people that are
8      attempting to help him the most.  I was going to say
9      60 months, and clear it up with the Marshal --
10         MR. ALCALA:  I appreciate --
11         THE COURT:  -- or with the -- whoever it is.
12         MR. ALCALA:  I appreciate everyone's effort in
13     clearing this up.  I am just concerned that by just stating
14     "time served" -- we just want to be very clear that it's the
15     six months plus time served.  And if the Court wants to put
16     the dates, that would be more helpful for BOP --
17         THE COURT:  Go ahead.  Give me the dates.
18         MR. ALCALA:  I think he was arraigned
19     December 2nd, if I am not mistaken.  That would be
20     arraignment.
21         THE COURT:  December 2nd of --
22         MR. ALCALA:  2016.  And again --
23         THE COURT:  Of 2016, all right.
24         MR. MASSUCCO:  The 17th, Your Honor.
25         THE COURT:  What is the date?
```

1    MR. ALCALA:  I'm sorry, Your Honor.  I believe

2  it's December 2nd.  It's in the docket.  I do apologize.  I

3  don't have that on me right now.

4    THE COURT:  Ana?

5    DEPUTY CLERK:  Just one second, Your Honor.

6    THE COURT:  Okay.  Thank you.

7    DEPUTY CLERK:  Arraignment/bail hearing was held

8  on December 15, 2016.

9    MR. ALCALA:  Correct.

10    THE COURT:  When was it, Ana?

11    DEPUTY CLERK:  December 15, 2016.

12    THE COURT:  Okay.  Thank you.  Then the dates that

13  he was --

14    MR. ALCALA:  He was brought into the jurisdiction

15  approximately six months before that, which I believe,

16  according to one of the exhibits that I filed, it's June 21,

17  2016.

18    THE COURT:  All right.  Okay.  Now, I just looked

19  at the presentence report as to the -- any physical or

20  mental health that he may be needing.  No history of mental

21  or emotional problems, but there is history of drug use.

22  But this case has a weapon charge, so he would not receive

23  the credit, but he may be receiving the drug treatment.

24    MR. ALCALA:  I think that he took a particular

25  drug treatment program while he was serving in the New York

1   case, Your Honor.  I think he did 40 hours.  We can

2   certainly request it again on this particular case.

3                 THE COURT:  Okay.  Very well.  Okay.  Thank you.

4                 So is there any reason why the Court should not

5   enter sentence at this time?

6                 MR. ALCALA:  Not that we know of, Your Honor.

7                 THE COURT:  Okay.  On January 25, 2018, the

8   defendant, Anthony Torres-Lopez, pled guilty to Count One of

9   the indictment filed in Criminal Case Number 11-CR-00241,

10   which charges a violation of Title 21 U.S.C. Section

11   841(b)(1)(B), 846, and 860, a Class B felony.  The

12   November 1st edition of the United States Sentencing

13   Guidelines has been used to apply the advisory guideline

14   adjustments pursuant to the provisions of Guideline

15   Section 1B1.11(a).

16                 The guideline for a Title 21 U.S.C. 841 offense is

17   found at United States Guidelines 2D1.1 of the guidelines.

18   That section provides that conspiracy to possess with intent

19   to distribute at least 500 grams but less than two kilograms

20   of cocaine within a thousand feet of a protected location

21   has a total base offense level of 26 pursuant to United

22   States Guidelines 2D1.2(a)(1) and 2D1.1(a)(5).

23                 Since the defendant has demonstrated acceptance of

24   responsibility for his participation in the offense, the

25   offense level is reduced by three levels pursuant to

1    Guideline Section 3E1.1(a) and (b).  There are no other

2    applicable guideline adjustments.

3          Based on a total offense level of 23 and a

4    criminal history category of II, the guideline imprisonment

5    range for this offense is from 60 to 63 months, with a fine

6    range of 10,000 to 10 million, plus a supervised release

7    term of eight years.

8          The Court has reviewed the advisory guideline

9    calculations and finds that the presentence investigation

10   report has adequately applied the guideline computations.

11   The guideline computations satisfactorily reflect the

12   components of this offense by considering its nature and

13   circumstances.  Furthermore, the Court has considered the

14   other sentencing factors set forth at Title 18 U.S.C.

15   Section 3553(a).

16         Mr. Torres is a 39-year-old U.S. citizen, resident

17   of New York, who has four dependents.  He completed his

18   12th-grade education and was unemployed prior to being

19   incarcerated.  He has no reported mental health issues.  As

20   to physical health, he reported having serious dental

21   problems causing loss of teeth.  Further, Mr. Torres has a

22   reported history of substance abuse to include marijuana and

23   non-prescribed Percocet.  This is Mr. Torres' fifth known

24   arrest and his third conviction.

25         Lastly, the Court has taken into consideration the

1    elements of the offense, Mr. Torres-Lopez's participation in

2    the same within the drug trafficking conspiracy at La Perla

3    in San Juan, Puerto Rico.

4          Moreover, the Court has also considered all the

5    other factors of 18 U.S.C. Section 3553, the elements of the

6    offense, the plea agreement between the parties, and the

7    need to promote respect for the law and protect the public

8    from further crimes by the defendant, as well as addresses

9    the issues of deterrence and punishment.  The Court deems

10    that a sentence below the guidelines is a sentence that is

11    just but not greater than necessary, and the Court will

12    explain it a little further on.

13          The defendant is serving a federal imprisonment

14    term for the Southern District of New York, 11-CR-569.  He

15    was transported to the Metropolitan Detention Center in

16    Puerto Rico on June 21, 2016, and brought up for the instant

17    matter, and it took them six months to arraign the

18    defendant, as he was arraigned on December 15, 2016.

19    Therefore, the Court will depart downward pursuant to United

20    States Guidelines 5G1.3(d), a period of six months, which is

21    time served in connection with the offense of conviction.

22          So from June 21, 2016 to December 15, he

23    remained -- that entire period, he remained sitting there in

24    prison.  Nothing happened.  So the Court is going to provide

25    him the credit from December 15 -- excuse me, from June 21,

1    2016 to the arraignment date of December 15, 2016.

2              Okay.  After the Court has taken that out,

3    therefore, it is the judgment that Mr. Anthony Torres-Lopez

4    is hereby committed to the custody of the Bureau of Prisons

5    to be imprisoned for a term of 54 months.  Those 54 months

6    start with the date of the arraignment, and he is credited

7    until that date.

8              Upon release -- now, sir, beware.  There is a bit

9    of confusion here in Puerto Rico.  A federal sentence is

10   composed of two parts.  One is the actual time of

11   imprisonment, which in this case is 54 months, dating back

12   to the date of arraignment.  But a federal sentence is

13   composed of two parts; not only the actual custodial time,

14   but the time under supervised release.  And this crime was a

15   crime in a place near a school and also near facilities that

16   qualify for the higher end of supervised release.  So you

17   will have to serve eight years of supervised release.

18             Now, there are some new laws now that if you

19   behave, the United States Probation Office may file motions

20   and request the Court to diminish the term.  But as of now,

21   you have to serve eight years under supervised release.  Do

22   you understand that?

23             THE DEFENDANT:  Yes, Your Honor.

24             THE COURT:  Be it here in Puerto Rico, be it in

25   New York, or wherever you decide you are going to reside.

1    All right.  Do you understand that?

2              THE DEFENDANT:  Yes, Your Honor.

3              THE COURT:  Okay.  These are your conditions, sir.

4    The defendant shall not commit another federal, state or

5    local crime, and shall observe the standard conditions of

6    supervised release recommended by the United States

7    Sentencing Commission and adopted by this Court.  The

8    defendant shall not unlawfully possess controlled

9    substances.  The defendant shall refrain from possessing

10   firearms, destructive devices, and other dangerous weapons.

11             The defendant shall participate in transitional

12   and re-entry support services, including

13   cognitive-behavioral treatment services under the guidance

14   and supervision of the United States Probation Office.  The

15   defendant shall remain in the services until satisfactorily

16   discharged by the service provider with the approval of the

17   Probation Office.

18             The defendant shall provide the U.S. probation

19   officer access to any financial information upon request.

20   The defendant shall cooperate in the collection of a DNA

21   sample as directed by the probation officer pursuant to the

22   revised DNA collection requirements and Title 18 U.S. Code

23   Section 3563.

24             Now, this condition is new, sir.  It has been

25   applied for the last three or four years.  It is related to

1    drugs and to weapons, and the emphasis is drugs and crimes

2    of violence.  And the selling of drugs near a protected

3    location is considered a very serious offense.

4              The defendant shall submit to a search of his

5    person, property, house, residence, vehicle, papers,

6    computers, and other electronic communication or data

7    storage devices or media and effects, all as defined at

8    Title 18 U.S.C. Section 1030(e)(1), to a search at anytime,

9    with or without a warrant, by the probation officer and, if

10   necessary, with the assistance of any other law enforcement

11   officer in the lawful discharge of the supervisory functions

12   of the probation officer, with reasonable suspicion

13   concerning unlawful conduct or a violation of condition of

14   probation or of supervised release.

15             The probation officer may seize any electronic

16   device which will be subject to further forensic

17   investigation and analysis.  Failure to submit to such a

18   search and seizure may be grounds for revocation.  The

19   defendant shall warn any other residents or occupants that

20   their premises may be subject to a search pursuant to this

21   condition.

22             In consideration of the Supreme Court's ruling in

23   Riley v. California, the Court will order that any search of

24   the defendant's phone by Probation while the defendant is on

25   supervised release be performed only if there is a

1    reasonable articulable suspicion that a specific phone owned

2    or used by the defendant either contains evidence of a crime

3    or evidence of violation of release condition, was used in

4    furtherance of a crime, or was specifically used during the

5    actual commission of a crime.

6              This is basically a condition, sir, that if they

7    understand -- while Probation is providing the services of

8    watching you to make sure you are not violating the law, if

9    they understand that once again you are in drugs or you have

10   weapons or you have plans to carry on yet another felony,

11   they can -- under reasonable suspicion, they can search your

12   house, your car, and your belongings.  Do you understand

13   that?

14             THE DEFENDANT:  Yes, Your Honor.

15             THE COURT:  The defendant shall participate in an

16   approved substance abuse monitoring and/or treatment

17   services program.  The defendant shall refrain from the

18   unlawful use of controlled substances.  And you shall submit

19   to a drug test within 15 days of release, thereafter, submit

20   to random drug testing, not less than three samples during

21   the supervised period, and not to exceed 104 samples per

22   year in accordance with the drug aftercare program policy of

23   the United States Probation Office, approved by this Court.

24             If deemed necessary, the treatment can be arranged

25   by the officer in consultation with the treatment provider.

1   The defendant is required to contribute to the cost of

2   services rendered, co-payment, in an amount arranged by the

3   probation officer based on your ability to pay or

4   availability of third-party payment.

5          The Court finds that the conditions imposed are

6   reasonably related to the offense of conviction and to the

7   sentencing factors set forth at 18 U.S.C. Section 3553.

8   Further, the Court finds that the conditions imposed are

9   consistent with the Sentencing Commission pursuant to

10  Title 28 U.S.C. Section 994(a), and there is no greater

11  deprivation of liberty than what is reasonably necessary to

12  fulfill all the sentencing objectives, including

13  rehabilitation, positive reintegration to the community,

14  just punishment and deterrence.

15         Having considered Mr. Torres-Lopez's financial

16  condition, a fine is not imposed.  A special monetary

17  assessment in the amount of $100 is imposed, all relating to

18  the Crime Victim Fund, as required by law.

19         Has that been paid, Counsel?

20         MR. ALCALA:  Not yet, Your Honor.

21         THE COURT:  Okay.  So the Court grants him the

22  time that he will continue to serve for him to save the

23  $100, and pay it when you exit.

24         The Court encourages that you take educational

25  courses.  So before I finish then, do you have any idea of

1    matters that you would like to study or matters that you

2    would like to receive special education so that when you

3    come out, you can be a more profitable person for the

4    benefit of your four children and yourself?

5              THE DEFENDANT:  Your Honor, since I have been in

6    FCI Fort Dix, I have taken wood shop.  I have taken

7    flooring --

8              THE COURT:  Okay.

9              THE DEFENDANT:  -- which I would be interested in

10   getting --

11             THE COURT:  You would like to return to Fort Dix;

12   is that it?

13             THE DEFENDANT:  Yes.

14             THE COURT:  Okay.  So Ana, so the Court

15   recommends -- highly recommends that this defendant can

16   serve the remaining part of his sentence at Fort Dix,

17   New Jersey.

18             Now, what type of courses would you like to take

19   there, in addition to those that you may have already taken,

20   sir?

21             THE DEFENDANT:  There is an advanced program that

22   I think Seton Hall was giving.  I was in the process of

23   taking it, but I got -- I had to come on this writ.

24             THE COURT:  Okay.  So the Court recommends that

25   you take -- give me the name of the course --

```
1              THE DEFENDANT:  The course was business

2       management.

3              THE COURT:  -- business management.  That was

4       being offered by Seton Hall?

5              THE DEFENDANT:  Yes.

6              THE COURT:  Seton Hall University.  They are in

7       West Orange, New Jersey.  So I imagine that they send

8       persons to Fort Dix to provide that education.  Right?

9              THE DEFENDANT:  Yes, Your Honor.

10             THE COURT:  All right.  Anything further

11      health-wise, sir?  Health-wise -- have all your teeth been

12      now corrected?

13             THE DEFENDANT:  No, Your Honor.  There is a

14      waiting process.

15             THE COURT:  So the Court recommends and orders

16      that during the rest of his time in service, that you be

17      provided with the treatment of your teeth as required under

18      3553(2)(d), which refers to medical treatment.

19             THE DEFENDANT:  Thank you, Your Honor.

20             THE COURT:  All right.  Now, any other physical

21      matter that the Court should take care of you at this time?

22             THE DEFENDANT:  No, Your Honor.  Since day one,

23      when I turned myself in on February 6, 2012, I notified

24      that -- about the Puerto Rico situation.  On my sentencing

25      transcript it was also mentioned.  And I just wanted to get
```

1   this out of the way so that I could start being a new

2   citizen, you know, being there for my kids.

3            THE COURT:  All right.  I hope -- you are still a

4   young man, sir.  So go ahead.  All right.  Good luck to you.

5            The defendant can appeal his or her conviction if

6   the defendant, that is you, believes that your guilty plea

7   was somehow unlawful or involuntary -- well, I don't think

8   it was either unlawful or involuntary because I have

9   sentenced you to what you agreed, and what you agreed was

10  the minimum sentence under the law, and the Court has gone

11  downward on it because you have served six months before you

12  were arraigned, all right -- or if there is other

13  fundamental defect in the proceedings that was not waived by

14  your guilty plea.

15           Generally, as a defendant, you also have the

16  statutory right to appeal your sentence under certain

17  circumstances, particularly if you think the sentence is

18  contrary to the law.  However, a defendant may waive those

19  rights as part of the plea agreement.  And you have entered

20  into a plea agreement in which you waived your right to

21  appeal substantive issues regarding both your conviction and

22  your sentence in this case.  Such waivers are also generally

23  enforceable and, as such, a defendant may waive substantive

24  challenges to the conviction and sentence.  However, if you

25  believe your waiver of your right to appeal your judgment of

1   conviction and sentence is not enforceable because there is

2   a procedural defect, you can present that theory to the

3   Appellate Court.

4            Sir, with few exceptions, any notice of appeal

5   must be filed within 14 days of judgment being entered in

6   your case.  If you are unable to pay the cost of an appeal,

7   you may apply for leave to appeal in forma pauperis.  If you

8   so request, the clerk of the court will prepare and file a

9   notice of appeal on your behalf.

10            The Court directs that the transcript of the

11   sentencing proceedings be forwarded to the Sentencing

12   Commission, United States Bureau of Prisons, as well as the

13   Probation Office within 30 days.

14            Counsel, have I left anything in the ink bottle

15   that I think your client -- or that you think your client

16   should be receiving?

17            MR. ALCALA:  Your Honor, we respectfully request

18   the Court to impose a concurrent sentence with the New York

19   case along with, if possible, a copy of the sentencing

20   transcript.  And the sentencing transcript --

21            THE COURT:  You are entitled to the sentencing

22   transcript.

23            MR. ALCALA:  Yes.  I just wanted to do it on the

24   record, Your Honor, because of the fact that -- I just

25   wanted the client to understand that we will be requesting

1    one.

2            THE COURT:  Any further request that is not what I

3    illustrated in this sentence is denied, because I have

4    provided you all the terms.

5            MR. ALCALA:  I got completely lost, and I agree.

6    There is nothing else.  I was just asking the Court.  And

7    that would be all.  Thank you very much.

8            THE COURT:  Thank you.  United States?

9            MR. MASSUCCO:  That's it, Your Honor.  We have

10   nothing further, except for --

11           THE COURT:  You don't have to dismiss any charges

12   as to this defendant?

13           MR. MASSUCCO:  Remaining charges be dismissed.

14           THE COURT:  The remaining charges as to the

15   defendant are ordered to be dismissed with prejudice.

16           MR. ALCALA:  Thank you, Your Honor.

17           THE COURT:  Sir, good luck again, all right.  I

18   like your style.  I think you were being extremely honest

19   with the Court.  You were born in 1979.  That's 21 years,

20   and now we have 18, so you are 39 years old.  Life

21   expectancy is over 70.  Stay away from the drugs.  Life

22   expectancy is way over 70, all right.  So good luck to you.

23           THE DEFENDANT:  Thank you, Your Honor.

24           PROBATION OFFICER:  Your Honor, if I may.  I

25   apologize to the Court.  Malissa Aponte, United States

1   Probation Office.  I wanted to clarify.  I don't believe I

2   heard the concurrency with the New York case, so that he may

3   be -- benefit from that additional time that he's been held

4   since arraignment.  I don't believe --

5           MR. ALCALA:  That was my request right now, to ask

6   the Court to impose a concurrent sentence with the case in

7   New York, which is the 11-569(PAC) case, which is part of

8   the plea agreement that was proposed to the Court.

9           THE COURT:  Granted.  Concurrency is granted.

10          MR. ALCALA:  Thank you.

11          THE COURT:  So there you go.  Anything further?

12          MR. ALCALA:  That would be all.

13          MR. MASSUCCO:  Thank you, Your Honor.

14          THE DEFENDANT:  Have a nice day.

15          (PROCEEDINGS ADJOURNED AT 11:21 A.M.)

16

17

18

19

20

21

22

23

24

25

```
1   UNITED STATES DISTRICT COURT )
                                 )   ss.
2   OF PUERTO RICO               )

3

4

5                   REPORTER'S CERTIFICATE

6

7

8           I, LISA O'BRIEN, do hereby certify that the above

9   and foregoing, consisting of the preceding 26 pages,

10  constitutes a true and accurate transcript of my

11  stenographic notes and is a full, true and complete

12  transcript of the proceedings to the best of my ability.

13          Dated this 8th day of December, 2018.

14

15                          S/Lisa O'Brien
                            Lisa O'Brien
16                          USDC Court Reporter

17

18

19

20

21

22

23

24

25
```